UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

(FILED ELECTRONICALLY)

CIVIL ACTION NO.   5:19-cv-25-TBR

UNITED STATES OF AMERICA                                          PLAINTIFF

vs.

BLAKE JORDAN DUNEVANT                                          DEFENDANTS
420 Theda Road
Mayfield, KY 42066-4808

## COMPLAINT FOR FORECLOSURE AND REPLEVIN OF COLLATERAL

Plaintiff, the United States of America, states as follows:

1.      This is a collection action brought by the United States of America on behalf of its agency, the United States Department of Agriculture, Farm Service Agency ("FSA"), seeking to foreclose on real property and personal property.

2.      Jurisdiction arises under 28 U.S.C. § 1345.

3.      Venue is proper in this judicial division, where the subject property is located.

## COUNT I

4.      Defendant, Blake Jordan Dunevant (the "Borrower"), executed and delivered to FSA, for valuable consideration, a Promissory Note dated August 12, 2015 in the original principal amount of $47,000.00 plus interest at the rate of 2.625% ("2015 Note").  A copy of this 2015 Note is attached as **Exhibit A**, and is incorporated by reference as if set forth fully herein.

5.      The Borrower is obligated to pay the United States under the 2015 Note, and the Borrower has defaulted on the 2015 Note by failing to make payments when due.

6.      As a result of the Borrower's default, FSA has, in accordance with the loan documents, accelerated the loan and declared the entire principal balance, together with all accrued and unpaid interest and all other sums due under the loan documents, to be due and payable.

7.      FSA has notified the Borrower of his default and FSA's acceleration of the loan.

8.      As of September 5, 2018, the total amount owed by the Borrower on the 2015 Note is $40,088.03 in principal, plus interest of $2,270.22 for a total amount of $42,358.25. Interest continues to accrue on the 2015 Note in the amount of $2.8830 per day until paid in full.

9.      The 2015 Note also provides that the United States is entitled to recover any amounts advanced or expended by the United States to enforce the Borrower's obligation under the 2015 Note.

10.      In addition to the other relief sought in this Complaint, the United States seeks a personal judgment against the Borrower for the amount owed on the 2015 Note, plus interest and costs as allowed by law.

## COUNT II

11.      The United States incorporates by reference the preceding allegations as if set forth herein.

12.      To secure repayment of the 2015 Note, the Borrower executed and delivered to FSA a Security Agreement granting FSA a security interest in all of the Borrower's livestock, farm products and any resulting proceeds ("Livestock").  A copy of the Security Agreement between the Borrower and FSA is attached as **Exhibit B** and is incorporated by reference as if set forth fully herein.

2

13.     To perfect its security interest in the Livestock described in the Security

Agreement, FSA filed a UCC Financing Statement with the Kentucky Secretary of State as

follows:

| **Document Number** | **Filing Date** | **Description** |
|---|---|---|
| 2015-2782923-71.01 | 8/12/2015 | All Livestock etc. |

A copy of the UCC Financing Statement is attached as **Exhibit C** and is incorporated by

reference as if set forth fully herein

14.     Based on a search of the records of the Kentucky Secretary of State's Office, it

does not appear that any other party has a lien or other interest in the Livestock.

15.     Upon information and belief, the Borrower is in possession of the Livestock.

16.     Pursuant to the terms of the 2015 Note and the Security Agreement, if the

Borrower defaults on the loan documents, then, FSA, at its option, may enter onto any premises,

take possession of the Livestock, and exercise any sale or other rights afforded to FSA under the

loan documents or other law.  Furthermore, by executing the Security Agreement, the Borrower

agreed to assemble the collateral and make it available upon default.

17.     Due to the Borrower's default on the 2015 Note and Security Agreement, the

United States is entitled to all the remedies of a secured party under Kentucky's Uniform

Commercial Code and the Security Agreement, including, without limitation, (a) enforcement of

all rights against the collateral as set forth in Kentucky's Uniform Commercial Code; (b)

requiring the Borrower to assemble and make the collateral available at a location determined by

FSA; (c) selling the collateral at a private or public sale; and (d) allowing the United States (or its

agent) to enter any premises where the collateral is located to take immediate possession of, take

control of, and remove the collateral.  The United States is also entitled to enforce its security

interest in the collateral and sell the collateral to satisfy any judgment entered in favor of the United States.

18.     The Security Agreement also permits the United States to recover all costs associated with the preservation and protection of the collateral and to deduct all costs incurred during the collection and disposition of the collateral from the sale proceeds.

## COUNT III

19.     The United States incorporates by reference the preceding allegations as if set forth herein.

20.     The Borrower executed and delivered to FSA, for valuable consideration, a Promissory Note dated May 5, 2016 in the original principal amount of $105,000.00 plus interest at 3.500% ("2016 Note").  A copy of this 2016 Note is attached as **Exhibit D**, and is incorporated by reference as if set forth fully herein.

21.     The Borrower is obligated to pay the United States under the 2016 Note, and the Borrower has defaulted on the 2016 Note by failing to make payments when due.

22.     As a result of the Borrower's default, FSA has, in accordance with the loan documents, accelerated the loan and declared the entire principal balance, together with all accrued and unpaid interest and all other sums due under the loan documents, to be due and payable.

23.     FSA has notified the Borrower of his default and FSA's acceleration of the loan.

24.     As of September 5, 2018, the total amount owed by the Borrower on the 2016 Note is $105,000.00 in principal, plus interest of $7,052.37 for a total amount of $112,052.37. Interest continues to accrue on the 2016 Note in the amount of $10.0685 per day until paid in full.

25.     The 2016 Note also provides that the United States is entitled to recover any amounts advanced or expended by the United States to enforce the Borrower's obligation under the 2016 Note.

26.     In addition to the other relief sought in this Complaint, the United States also seeks a personal judgment against the Borrower for the amount owed on the 2016 Note, plus interest and costs as allowed by law.

## COUNT IV

27.     The United States incorporates by reference the preceding allegations as if set forth herein.

28.     To secure repayment of the 2016 Note, the Borrower executed and delivered to FSA a Mortgage encumbering the real property described therein.

29.     This Mortgage was recorded on May 5, 2016 in Mortgage Book 862, Page 397 in the Graves County Clerk's Office (the "Mortgage").  A copy of this Mortgage is attached as **Exhibit E** to this Complaint and incorporated by reference as if set forth fully herein.

30.     This Mortgage is a first mortgage lien against the tracts of real property described in more detail in Exhibit A to the Mortgage.

31.     Due to the Borrower's default on the 2016 Note and Mortgage, the United States is entitled to foreclose on the subject real property pursuant to the Mortgage to satisfy any judgment in favor of the United States.

32.     The real property encumbered by the Mortgage is indivisible and therefore must be sold as a whole.

33.     Pursuant to Section 7 of said mortgage, the United States is entitled to recover any advances made to preserve the subject property and for the expenses of this action.

34.    The Mortgage granted to the United States by the Borrower is a purchase money mortgage.  The United States is unaware if the Borrower has a spouse, but even if such spouse existed, pursuant to KRS 392.040(1), any surviving spouse shall not have a spousal interest in land sold in good faith after marriage to satisfy an encumbrance created before marriage or to satisfy a lien for the purchase money.

35.    There are no other persons or entities purporting to have an interest in the real property known to the United States.

## COUNT V

36.    The United States incorporates by reference the preceding allegations as if set forth herein.

37.    To further secure repayment of the 2016 Note, the Borrower granted FSA a security interest in the Borrower's 2001 Harley Davidson Dynasup motorcycle, VIN # ************9050 ("Motorcycle").

38.    Debtor executed a Title Lien Statement in favor of FSA as to the Motorcycle, which was filed with the Graves County Clerk, and FSA's lien was notated on the Motorcycle's Certificate of Title.  Copies of the Certificate of Title for the Harley Davidson and the Title Lien Statement are attached to the Complaint as **Exhibit F**.

39.    Based on a search of the public records, it does not appear that any third party has a lien on or interest in the Motorcycle.

40.    Upon information and belief, the Borrower is currently in possession of the Motorcycle.

41.    Due to the Borrower's default on the 2016 Note, the United States is entitled to the remedies of a secured party under Kentucky's Uniform Commercial Code, including, without limitation, (a) enforcement of all rights against the collateral as set forth in Kentucky's Uniform

Commercial Code; (b) requiring the Borrower to assemble and make the collateral available at a location determined by FSA; (c) selling the collateral at a private or public sale; and (d) allowing the United States (or its agent) to enter any premises where the collateral is located to take immediate possession of, take control of, and remove the collateral.  The United States is also entitled to enforce its security interest in the collateral and sell the collateral to satisfy any judgment entered in favor of the United States.

42.     There are no other persons or entities purporting to have an interest in the real Motorcycle known to the United States.

WHEREFORE, Plaintiff, the United States of America, on behalf of FSA, demands:

a.     Judgment on Count I against the Borrower in the principal amount of $40,088.03, plus interest of $2,270.22 as of September 5, 2018 for a total amount of $42,358.25, with interest accruing at the daily rate of $2.8830 from September 5, 2018 until the date of entry of judgment, and interest thereafter according to law, plus any additional costs, disbursements and expenses advanced by the United States;

b.     Judgment on Count II awarding the United States immediate possession of the Livestock and permitting the United States to enforce its security interest in the Livestock at one or more sales in the manner provided by law;

c.     Judgment on Count III against the Borrower in the principal amount of $105,000.00, plus interest of $7,052.37 as of September 5, 2018, for a total amount of $112,052.37, plus interest accruing at the daily rate of $10.0685 per day from September 5, 2018 until the date of entry of judgment, and interest thereafter according to law, plus any additional costs, disbursements and expenses advanced by the United States;

d.     Judgment on Count IV awarding the United States a first lien on the real property, prior and superior to any and all other liens, claims, interests and demands, except liens for

7

unpaid ad valorem taxes, and permitting the lien be enforced and the real property be sold in accordance with Title 28 U.S.C. §§ 2001-2003 subject to easements, restrictions and stipulations of record, but free and clear of all other liens and encumbrances except liens for any unpaid ad valorem taxes;

     e.     Judgment on Count V awarding the United States immediate possession of the Motorcycle and permitting the United States to enforce its prior security interest in the Motorcycle in the manner provided by law;

     f.     On all Counts, that the proceeds from any sale be applied first to the costs of this action, second to any ad valorem taxes, if any, third to the satisfaction of the Judgments in favor of the United States, with the balance remaining to be distributed to the remaining parties as their liens or interests may appear;

     g.     On all Counts, that if any deficiency remains after application of the proceeds of the sale of the real property and collateral to the United States' judgments, that the United States have a deficiency judgment against the Borrower; and

     h.     That the United States receive any and all other lawful relief to which it may be entitled.

<div align="right">

UNITED STATES OF AMERICA

RUSSELL M. COLEMAN
United States Attorney

*s/ Katherine A. Bell*
Katherine A. Bell
William F. Campbell
Assistant U.S. Attorneys
717 West Broadway
Louisville, KY  40202
Phone:  502/582-5911
Fax:    502/625-7110
Katherine.bell@usdoj.gov

</div>

This form is available electronically.

| | |
|---|---|
| **FSA-2026**<br>(12-05-12) | Form Approved - OMB No. 0560-0237<br>(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.) |

**U.S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

Position 2

## PROMISSORY NOTE

| 1. Name<br>DUNEVANT, BLAKE JORDAN | 2. State<br>KENTUCKY | 3. County<br>GRAVES |
|---|---|---|
| 4. Case Number ~~████████~~ | 5. Fund Code<br>44 | 6. Loan Number<br>01 | 7. Date<br>08/12/2015 |

| 8. TYPE OF ASSISTANCE<br>OL-BF-REG-7YR MICRO | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

- ☒ Initial loan
- ☐ Consolidation
- ☐ Subsequent loan
- ☐ Conservation easement
- ☐ Rescheduling
- ☐ Reamortization
- ☐ Deferred payments
- ☐ Debt write down

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in (a) MAYFIELD, KY----------------------- or at such other place as the Government may later designate in writing, the principal sum of (b) FORTY-SEVEN THOUSAND AND 00/100----------------------------------- --------------------------------- dollars (c) ($ 47,000.00----------------------------- , plus interest on the unpaid principal balance at the RATE of (d) TWO AND FIVE EIGHTHS------------------------------------------ percent (e) 2.625--- %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in (a) SEVEN installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 7,438.00 | 07/01/2016 | $ | |
| $ | | $ | |
| $ | | $ | |
| $ | | $ | |

and (d) $ 7,438.00---- thereafter on the (e) 1ST OF JULY of each (f) YEAR until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable (g) SEVEN years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC  20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial BD     Date 8-12-15

**EXHIBIT A**

FSA-2026 (12-05-12)

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _BO_      Date _8-12-15_

FSA-2026 (12-05-12)

20.  The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21.  Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22.  This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8.  This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23.  Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

_Blake Dunevant_

BLAKE JORDAN DUNEVANT
492 JOHNNIE RD
MAYFIELD, KY 42066

NOTE:    The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended).  The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.).  The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower.  Providing the requested information is voluntary.  However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees.  The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

This form is available electronically.

Form Approved - OMB No. 0560-0238
*(See Page 7 for Privacy Act and Paperwork Reduction Act Statements).*

| FSA-2028 | U.S. DEPARTMENT OF AGRICULTURE | Position 1 |
| (11-12-14) | Farm Service Agency | |

### SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT**, *dated (a)* __August 12__ , __2015__ , is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) **BLAKE JORDAN DUNEVANT,**

(Debtor), whose mailing address is (c) 492 JOHNNIE RD, MAYFIELD, KY 42066-6640

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE**, in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a):*

Initial _BD_ Date _8-12-15_





EXHIBIT
B

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
| 4033 AC Rule | 31 | GRAVES, KY | 1 mi S of HWY on Millers<br>Chaple Rd |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _BW_ Date _8-12-15_

**FSA-2028** (11-12-14)                                                                                          Page 3 of 7

(c) All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)*
_____Kentucky_____

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |
| 21 | | | | | | | |
| 22 | | | | | | | |
| 23 | | | | | | | |
| 24 | | | | | | | |
| 25 | | | | | | | |
| 26 | | | | | | | |
| 27 | | | | | | | |
| 28 | | | | | | | |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _BD_   Date _8-12-15_

**FSA-2028** (11-12-14)                                                                                                          Page 4 of 7

(d)  All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other
     animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by
     Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following
     located in the State(s) of *(1)*

    Kentucky

    _____ :

| (2) Line No. | (3) Quantity | (4) Kind-Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 20 | Cattle - Beef | | | | | |
| 2 | 1 | Cattle - Brdg. - Bulls | | | | | |

Initial *BD*____ Date ___ 8-12-15 ____

**FSA-2028** (11-12-14)

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

ALL FEDERAL SUBSIDY ENTITLEMENTS IN WHATEVER FORM AND FROM WHATEVER SOURCE DERIVED,INCLUDING BUT NOT LIMITED TO ALL FSA,CCC,DAIRY TERMINATION,FCIC INSURANCE,PIK COMMODITY CERTIFICATES,AND SET OFF PROCEEDS,AND TTPP PAYMENTS.<?xml:namespace prefix = o ns = "urn:schemas-microsoft-com:office:office" />

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and *(3)* other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _BD_ Date _8-12-15_

**FSA-2028** (11-12-14)

## 4. IT IS FURTHER AGREED THAT:

(a) Until default, Debtor may retain possession of the collateral.

(b) **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

(1) Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

(2) Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

(3) A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c) Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d) It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e) Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f) Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g) This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h) If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

Initial  _BD_   Date _8-12-15_

**FSA-2028** (11-12-14)

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

(m) Debtor(s) acknowledge(s) that Secured Party loaned money to me/us to purchase items of collateral that serve as security for my/our loan, thereby, giving Secured Party a Purchase Money Security Interest in those items of collateral listed in Part 2. (c) or (d) with an asterisk*.

## 5. CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

&lt;?xml:namespace prefix = o ns = "urn:schemas-microsoft-com:office:office" /&gt;

6A. _Blake Dunevant_

    BLAKE JORDAN DUNEVANT

6B. *(Date)* _8-12-15_

                            *(Date)* _____

    Debtor

**NOTE:** *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

*The U.S. Department of Agriculture (USDA) prohibits discrimination against its customers, employees, and applicants for employment on the basis of race, color, national origin, age, disability, sex, gender identity, religion, reprisal, and where applicable, political beliefs, marital status, familial or parental status, sexual orientation, or all or part of an individual's income is derived from any public assistance program, or protected genetic information in employment or in any program or activity conducted or funded by the Department. (Not all prohibited bases will apply to all programs and/or employment activities.) Persons with disabilities, who wish to file a program complaint, write to the address below or if you require alternative means of communication for program information (e.g., Braille, large print, audiotape, etc.) please contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). Individuals who are deaf, hard of hearing, or have speech disabilities and wish to file either an EEO or program complaint, please contact USDA through the Federal Relay Service at (800) 877-8339 or (800) 845-6136 (in Spanish).*

*If you wish to file a Civil Rights program complaint of discrimination, complete the USDA Program Discrimination Complaint Form, found online at http://www.ascr.usda.gov/complaint_filing_cust.html, or at any USDA office, or call (866) 632-9992 to request the form. You may also write a letter containing all of the information requested in the form. Send your completed complaint form or letter by mail to U.S. Department of Agriculture, Director, Office of Adjudication, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, by fax (202) 690-7442 or email at program.intake@usda.gov. USDA is an equal opportunity provider and employer.*

## UCC FINANCING STATEMENT

Name and address of filer:

USDA, Farm Service Agency
1000 Commonwealth Drive
Mayfield, KY 42066

**2015-2782923-71.01**
Kentucky Secretary of State
File Date   8/12/2015 10:40:32 AM
Status      Active
Fee         $5.00

This document is a representation of a filing made electronically at the Kentucky Secretary of State's web site

DEBTOR'S EXACT FULL LEGAL NAME

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Dunevant | Blake | Jordan | |

| c. MAILING ADDRESS | CITY | | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 492 Johnny Rd | Mayfield | KY | 42066 | USA |

SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| USDA, Farm Service Agency | | | |
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| c. MAILING ADDRESS | CITY | | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1000 Commonwealth Drive | Mayfield | KY | 42066 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All livestock produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements and additions thereto, including inventory, accounts and contract rights, general intangibles and proceeds and products thereof, including all Federal or state subsidies and entitlements in whatever form and from whatever source derived.


EXHIBIT C

## Revised Article 9 UCC Search

### UCC Search Results

| File amendment to this UCC | Return to search form |

**File number:** 2015-2782923-71
**Filing date:** 8/12/2015 10:40:31 AM
**Lapse date:** 8/12/2020 10:40:31 AM
**Status:** A - Active

### ACTIONS

| Action | File Date | Status |
|---|---|---|
| Initial financing Statement | 8/12/2015 10:40:31 AM | Active - Filed online |

### NAMES

| Debtor/Secured Party/Filer | Date Added | Address |
|---|---|---|
| Debtor
Blake Jordan Dunevant | 8/12/2015 10:40:31 AM | 492 Johnny Rd
Mayfield KY 42066 |
| Secured Party
USDA, Farm Service Agency | 8/12/2015 10:40:31 AM | 1000 Commonwealth Drive
Mayfield KY 42066 |
| Filer
USDA, Farm Service Agency | 8/12/2015 10:40:31 AM | 1000 Commonwealth Drive
Mayfield KY 42066 |

### COLLATERAL DESCRIPTION

| Date Filed | Collateral Description |
|---|---|
| 8/12/2015 10:40:31 AM | All livestock produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements and additions thereto, including inventory, accounts and contract rights, general intangibles and proceeds and products thereof, including all Federal or state subsidies and entitlements in whatever form and from whatever source derived. |

### IMAGES

| Document Type | PDF | Tiff Image | File Date | Pages |
|---|---|---|---|---|
| UCC Filing - Initial financing Statement | PDF | | 8/12/2015 10:40:31 AM | 1 |

This form is available electronically.

Form Approved - OMB No. 0560-0237
*(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)*

**FSA-2026**
(12-05-12)

**U.S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

Position 2

## PROMISSORY NOTE

| 1. Name DUNEVANT, BLAKE JORDAN | 2. State KENTUCKY | 3. County GRAVES |
|---|---|---|

| 4. Case Number ~~[redacted]~~ | 5. Fund Code 41 | 6. Loan Number 03 | 7. Date 05/05/2016 |
|---|---|---|---|

8. TYPE OF ASSISTANCE
FO-BF-REG

9. ACTION REQUIRING PROMISSORY NOTE:

☒ Initial loan ☐ Conservation easement ☐ Deferred payments

☐ Consolidation ☐ Rescheduling ☐ Debt write down

☐ Subsequent loan ☐ Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)* MAYFIELD, KY----------------------- or at such other place as the Government may later designate in writing, the principal sum of *(b)* ONE HUNDRED AND FIVE THOUSAND & 00/100------------------------ -------------------------------- dollars *(c)* ($ 105,000.00------------------------------- , plus interest on the unpaid principal balance at the **RATE** of *(d)* THREE AND ONE HALF------------------------------------- percent *(e)* 3.500--- %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* THIRTY installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 5,710.00 | 04/01/2017 | $ | |
| $ | | $ | |
| $ | | $ | |
| $ | | $ | |

and *(d)* $ 5,710.00--- thereafter on the *(e)* 1ST OF APRIL of each *(f)* YEAR until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* THIRTY years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial BJD    Date 5-5-16

**FSA-2026** (12-05-12)

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a)<br>FUND CODE/<br>LOAN NO. | (b)<br>FACE AMOUNT | (c)<br>INTEREST RATE | (d)<br>DATE<br>(MM-DD-YYYY) | (e)<br>ORIGINAL BORROWER | (f)<br>LAST INSTALL.<br>DUE<br>(MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _BP_____   Date _5- 5 -16_

FSA-2026 (12-05-12)

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

_Blake Jordan Dunevant_

BLAKE JORDAN DUNEVANT
420 THEDA RD
MAYFIELD, KY 42066

NOTE:    The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended).  The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower.  Providing the requested information is voluntary.  However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees.  The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**




Form Approved-OMB No. 0560-0237
*(See Page 5 for Privacy Act and Public Burden Statements)*

Position 5
**FSA-2029 KY**       UNITED STATES DEPARTMENT OF AGRICULTURE
(08-26-08)                       Farm Service Agency

## MORTGAGE FOR KENTUCKY

THIS MORTGAGE ("instrument") is made on _____MAY 20_____ , 20 __16__ . The mortgagor is _____
__BLAKE JORDAN DUNEVANT, a single person__
_____ ("Borrower") whose mailing address is ___420 THEDA RD_____
__MAYFIELD, KY 42066_____ . This instrument is given to the United States of America acting through the Farm
Service Agency; United States Department of Agriculture ("Government") located at ___1000 COMMONWEALTH DR_____
__MAYFIELD KY 42066__

This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements
(collectively called "note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the
Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 05/05/2016 | $105,000.00 | 03.500% | 05/05/2046 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be
increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the
above note.

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof;
(2) recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001 (3) payment
of all advances and expenditures, with interest, made by the Government; and (4) the obligations and covenants of Borrower set
forth in this instrument, the note, and any other loan agreements.

In consideration of any loan made by the Government under the Consolidated Farm and Rural Development Act 7 U.S.C.
§ 1921 et seq. as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to Government the following
described property situated in the State of Kentucky, County or Counties of ___GRAVES_____ :

### See attached Exhibit A for legal description.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its program and activities on the basis of race, color, national origin, age, disability, and where
applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's
income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for
communication of program information ( Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of
discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, SW., Washington, DC 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382
(TDD). USDA is an equal opportunity provider and employer.

Initial __B J D__       date __5-5-16__                FSA-2029 KY (08-26-08) Page 1 of 8



 

## EXHIBIT A

Being a 1.96 acre parcel located east of the east right-of-way line of Theda Road (40.00 ft. r/w) approximately 2.0 miles south of the Golo community in Graves County, Kentucky.

And more particularly described as beginning at the proposed northwest corner of the property herein described, said corner being a ½" dia. x 24" lng. steel pin and surveyors cap #3437 set and lying on a bearing of S 13 deg. 23 min. 54 sec. E – 1752.17 feet from the intersection of the centerline of Theda Road and the centerline of State Route 464.

THENCE N 90 deg. 00 min. 00 sec. E – 180.23 feet along a severance line to a ½" dia. x 24" lng. steel pin and surveyors cap #3437 set, said pin being the proposed northeast corner of the property herein described;

THENCE S 13 deg. 42 min. 25 sec. E – 308.25 feet along a severance line to a 14" dia. Elm Tree, blazed with three (3) hacks, said Elm being the proposed southeast corner of the property herein described and being witnessed by a ½" dia. x 24" lng. steel pin and surveyors cap #3437 set at the base of said tree;

THENCE along a severance line and being the south line of the property herein described the following two (2) calls:

(1) S 61 deg. 37 min. 05 sec. W – 201.23 feet to a 6" x 8" cross-tie post, witnessed by a ½" dia. x 24" lng. steel pin and surveyors cap #3437 set at base of post;

(2) S 34 deg. 16 min. 05 sec. W – 137.75 feet to a 24" dia. Red Oak Tree, said tree being the proposed southwest corner of the property herein described and being witnessed by a ½" dia. x 24" lng. steel pin and surveyors cap #3437 set at base of tree;

THENCE N 00 deg. 09 min. 00 sec. E – 508.96 feet along a severance line to the point of beginning.

Together with and subject to easements, covenants and restrictions of record.

## INGRESS – EGRESS EASEMENT

Being 8 feet wide along an existing gravel drive-way and is more particularly described as follows:

Beginning at the southwest corner of said easement and being a point in the east right-of-way line of Theda Road and being N 00 deg. 44 min. 37 sec. E – 471.63 feet from the southwest corner of the parent tract as described in Deed Book 498, Page 346, said corner being a ½" dia. steel pin and surveyors cap #2750 found. THENCE along the east right-of-way line of Theda Road and the north side of the easement herein described the following twenty one (21) calls:

(1) THENCE N 00 deg. 11 min. 07 sec. E – 8.03 feet to a point, said point being the northwest corner of said easement;

(2) N 78 deg. 07 min. 10 sec. E – 49.13 feet to a point;

(3) N 04 deg. 04 min. 10 sec. W – 805.04 feet to a point;

Initial *BJD*    Date *5-5-16*                                            Page 6 of 8

 

(4) S 12 deg. 25 min. 33 sec. E – 818.86 feet to a point;

(5) S 77 deg. 57 min. 10 sec. E – 62.10 feet to a point;

(6) S 66 deg. 27 min. 39 sec. E – 26.06 feet to a point;

(7) S 71 deg. 05 min. 13 sec. E – 27.95 feet to a point;

(8) S 88 deg. 33 min. 28 sec. E -30.42 feet to a point;

(9) N 62 deg. 34 min. 49 sec. E – 27.51 feet to a point;

(10) N 32 deg. 21 min. 07 sec. E – 35.91 feet to a point;

(11) N 19 deg. 10 min. 13 sec. E – 5.93 feet to a point in the proposed west line of the 1.96 acre tract herein described;

(12) S 00 deg. 09 min. 00 sec. W – 17.55 feet along the west line of the easement herein described to a point, said point being the southeast corner of said easement;

(13) S 32 deg. 21 min. 07 sec. W – 29.00 feet to a point;

(14) S 62 deg. 34 min. 49 sec. W – 31.73 feet to a point;

(15) N 88 deg. 33 min. 28 sec. W – 33.71 feet to a point;

(16) N 71 deg. 05 min. 13 sec. W – 29.50 feet to a point;

(17) N 66 deg. 27 min. 39 sec. W – 25.58 feet to a point;

(18) N 77 deg. 57 min. 10 sec. W – 60.48 feet to a point;

(19) N 89 deg. 36 min. 59 sec. W – 52.91 feet to a point;

(20) S 86 deg. 44 min. 54 sec. W – 64.94 feet to a point;

(21) S 78 deg. 11 min. 28 sec. W – 49.60 feet to the point of beginning.

Being the same real property conveyed to Blake Jordan Duneyant, a single person, by Deed from Tyler Jordan Willett and wife, Riley Beth Willett, dated May ___5th___, 2016, recorded May ___5th___, 2016, at ___3:35 pM___, and of record in Deed Book ___5o1___, Page ___913___, Graves County Court Clerk's Office.

Initial _BJD_ Date _5-5-16_




together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions that are now or hereafter included in, affixed, or attached to "the property."

Borrower COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

    1. **Payment.** Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

    2. **Fees.** Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.

    3. **Application of payments.** Unless applicable law or Government's regulations provide otherwise all payments received by the Government shall be applied in the following order of priority: (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

    4. **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

    5. **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss, or damage that the Government may incur as a consequence of this assignment.

    6. **Insurance.** Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. § 4001 et seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

    7. **Advances by Government.** The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government in any order the Government determines.

Initial _B J D_    date _5-5-16_        FSA-2029 KY (08-26-08) Page 2 of 8




8. **Protection of lien.** Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

9. **Authorized purposes.** Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

10. **Repair and operation of property.** Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and (d) operate the property in a good and husbandlike manner. Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11. **Legal compliance.** Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12. **Transfer or encumbrance of property.** Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13. **Inspection.** At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14. **Hazardous substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the properly is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances deemed as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15. **Adjustment; release; waiver; forbearance.** In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

16. **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross Collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

Initial _B J D_ _____ date _5-5-16_ _____

FSA-2029 KY (08-26-08) Page 3 of 8

 

20. **Highly erodible land; wetlands.** Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21. **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. **Governing law; severability.** This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions hereof.  All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the Note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

26. **Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.


NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27. **Default; death; incompetence; bankruptcy.** Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, or operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument and sell the property as prescribed by law; and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28. **State law.** Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower.  Borrower expressly waives the benefit of any such State laws.

29. **Assignment of leases and rents.** Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Borrower will receive any rents in trust for the Government and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the

Initial _R J D_ _____ date _5-5-16_

FSA-2029 KY (08-26-08) Page 4 of 8




Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note. Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30. **Satisfaction of mortgage.** Upon satisfaction/termination of this mortgage, the Government at the Borrower's expense and only upon receipt of the appropriate filing fee, shall execute and file of record such instrument of release, satisfaction and termination in proper form pursuant to the requirements contained in K.R.S. 382.365.

31. **Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government, and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government in the order prescribed above.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

_Blake Jordan Dunevant_ (SEAL)        _____ (SEAL)
BLAKE JORDAN DUNEVANT

_____ (SEAL)        _____ (SEAL)


ACKNOWLEDGMENTS

STATE OF KENTUCKY
COUNTY OF ___GRAVES___ } ss.        (Individual)

On this ___5th___ day of ___May, 2016___. before me personally appeared ___BLAKE JORDAN DUNEVANT,___
___a single person___ with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), whose name is subscribed to the foregoing instrument, and acknowledged that (he, she, or they) signed and delivered the instruments as (his, her or their) free and voluntary act, for the uses and purposes set forth.

My commission expires:

___4-3-19___

_Lisa Moseley_
NOTARY PUBLIC

**NOTE:** The following statements are made in accordance with the Privacy Act of 1974 (5 USC 552a): the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act, (7 USC 1921 et seq.), and the regulations promulgated thereunder, to solicit the information requested on this form. The information requested is necessary for FSA to determine eligibility for financial assistance, service your loan, and conduct statistical analyses. Supplied information may be furnished to other Department of Agriculture agencies, the Department of the Treasury, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law. In addition, information may be referred to interested parties under the Freedom of Information Act, to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies. Disclosure of the information requested is voluntary. However, failure to disclose certain items of information requested, including Social Security Number or Federal Tax Identification Number, may result in a delay in the processing of this request or its rejection.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

FSA-2029 KY (08-26-08) Page 5 of 8

 

## PREPARERS STATEMENT

The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was prepared by

NEELY, BRIEN, WILSON & TOOMBS, PLLC
_____
Name

238 NORTH 7TH STREET, MAYFIELD, KY 42066
_____
(address)

_____
(Signature)

## RECORDER'S SIGNATURE

STATE OF KENTUCKY
COUNTY OF  GRAVES                              } ss.
_____

I,  ___Barry Kennemore___ , Clerk of the County Court for the County aforesaid, do certify that the foregoing mortgage was on the _____ day of ___May___ , 20 16 , lodged for record at _____ o'clock ____ m., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

Given under my hand this _____ day of ___May___ , 20 16 .

Clerk of _____ Graves _____ County Court

By _____ , D.C.

COUNTY OF GRAVES, Sct.

I, Barry Kennemore, Graves County Clerk in and for th'
'ate and County aforesaid do certify that this instrumen'
was lodged in my office for record on the __5th__ day o'
__May__ 20 16 , at __3:40__ o'clock __P.M.__ and the
same and the foregoing and this certificate have been duly
recorded in __Mg__ Book __862__ page __397__
in the Graves County Clerk's Office this the __6th__
day of __May__ 20 16

Barry Kennemore, Clerk RA-2029-KY (08/26-08) Page 8 of 8

Kentucky
Division of
TITLE LIEN STATEMENT

| ☒ ORIGINAL FILING | ☐ CONTINUATION | |
|---|---|---|
| 151 818 | Original File # _____ | Original _____ |
| | Original File Date _____ | Original _____ |

| 1. Debtor(s) (Last Name First) and Address | 2. Secured Party Name and Address | 3. For Filing Officer (Date, Time, Number and Filing Officer) |
|---|---|---|
| Dunevant, Blake<br>492 Johnnie Road<br>Mayfield, KY 42066 | Farm Service Agency<br>1000 Commonwealth Dr<br>Mayfield, KY 42066 | 2016 FEB 3 PM 8:59 |

4. Vehicle information:

| YEAR MODEL | MAKE | VEHICLE IDENTIFICATION NUMBER | ADDITIONAL DESCRIPTION |
|---|---|---|---|
| 2001 | HD | ████████9050 | DYNASUP, BLACK |

NOTE:
(1) This is a multi-purpose form that can only be used once. A new form must be completed by the Secured Party upon amendment, continuation, assignment or termination. A termination statement must be signed by the secured party.

(2) In compliance with KRS 186A.190 (2), "the notation of security interests relating to property required to be titled in Kentucky through the county clerk shall be done in the office of the county clerk of the county in which the debtor resides". Additional information regarding the required county of residence can be found in subsections (a-j) of KRS 186A.190 (2).

_Blake Dunvant_
Authentication of Debtor(s)

2-2-16
Date

_____
Authentication of Secured Party(s)
(Required for filing a termination)

_____
Date

_typed notice_

F

## COMMONWEALTH OF KENTUCKY
### TRANSPORTATION CABINET
### CERTIFICATE OF TITLE

| TITLE NO. | YEAR | MAKE | MODEL NAME | VIN/HIN | | TITLE TYPE | MODEL NO. |
|---|---|---|---|---|---|---|---|
| 140990420024 01 | HD | DYNASUP | | 9050 | OUT OF ST | |

| BODY TYPE | COLOR | NO CYL | ODOMETER | MOTOR NO. | WEIGHT | | PREV. TITLE NO /STATE |
|---|---|---|---|---|---|---|---|
| MC | BLK | 02 | 12898 2450 | | | | X2031691195  IL |

| KY NO | BOAT TYPE | LENGTH | BEAM | CAPACITY | HULL MATERIAL | PROPULSION |
|---|---|---|---|---|---|---|

| OWNER(S) NAME | DATE OF ISSUE 04/22/14 | FUEL | USAGE TAX PAID 348.36 |
|---|---|---|---|

T15

DUNEVANT, BLAKE
492 JOHNNIE RD
MAYFIELD KY  42066-6640

REMARKS

BRAND(S)

FIRST LIENHOLDER

SECOND LIENHOLDER

FARM SERVICE AGENCY
1000 commonweath dr
MAYFIELD, KY 42066

| | FIRST LIEN | County | | SECOND LIEN | County |
|---|---|---|---|---|---|
| Notation No. 151818 | | GRAVES | Notation No. | | |
| Filing Date 02/03/16 | | | Filing Date | | |
| Released By: | | | Released By: | | |
| County Clerk's use Only | | Date | County Clerk's use Only | | Date |

I certify that the Department of Vehicle Regulation has exercised due diligence in examining an application for a certificate of title for the above-described vehicle and to the best of our knowledge and belief the applicant whose name appears above is the lawful owner of the apparently legitimate vehicle described herein.

_Rodney Kuhl_ (STATE SEAL)   CONTROL NO.  C20533013

Commissioner, Department of Vehicle Regulation

49 USC SEC. 32705 AND KRS 190.300 REQUIRE THAT YOU STATE THE VEHICLE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE, OR PROVIDING FALSE STATEMENT, MAY RESULT IN PENALTIES.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### FIRST DEALER ASSIGNMENT

The undersigned owner hereby certifies that the vehicle described in this title has been transferred to the following (print name and address of transferee):

I certify to the best of my knowledge that the vehicle reading is the actual mileage of the vehicle unless one of the following statements is checked.

**\*\*\*\*CAUTION READ CAREFULLY BEFORE YOU CHECK A BLOCK\*\*\*\***

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING-ODOMETER DISCREPANCY

Odometer Reading _____ (no tenths)

Transferor(s) Signature(s) _____ (Seller) To be notarized    Transferee(s) Signature(s) _____ (Owner)

Transferor(s) Printed Name(s) _____ (Seller)    Transferee(s) Printed Name(s) _____ (Owner)

Date of Transfer _____  Seller Dealer No. _____  Purchasing Dealer No. _____

Attesting Official _____ Title _____

Subscribed and sworn before me this _____ day of _____ 20___ My commission expires _____ NOTARY PUBLIC

### SECOND DEALER ASSIGNMENT

The undersigned owner hereby certifies that the vehicle described in this title has been transferred to the following (print name and address of transferee):

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

**\*\*\*\*CAUTION READ CAREFULLY BEFORE YOU CHECK A BLOCK\*\*\*\***

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING-ODOMETER DISCREPANCY

Odometer Reading _____ (no tenths)

Transferor(s) Signature(s) _____ (Seller) To be notarized    Transferee(s) Signature(s) _____ (Owner)

Transferor(s) Printed Name(s) _____ (Seller)    Transferee(s) Printed Name(s) _____ (Owner)

Date of Transfer _____  Seller Dealer No. _____  Purchasing Dealer No. _____

Attesting Official _____ Title _____

Subscribed and sworn before me this _____ day of _____ 20___ My commission expires _____ NOTARY PUBLIC

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS, OR MUTILATIONS. MUST BE COMPLETED IN BLUE OR BLACK INK, 49 USC SEC. 32705 AND KRS 190.300 REQUIRE THAT YOU STATE THE VEHICLE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING FALSE STATEMENT, MAY RESULT IN PENALTIES.

D E A L E R   O N L Y

### DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

## DEFENDANTS

BLAKE JORDAN DUNEVANT

County of Residence of First Listed Defendant   GRAVES
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [x] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [x] 210 Land Condemnation
- [x] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

**PERSONAL INJURY**
- [ ] 362 Personal Injury - Med. Malpractice
- [ ] 365 Personal Injury - Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 440 Other Civil Rights

### PRISONER PETITIONS
- [ ] 510 Motions to Vacate Sentence
**Habeas Corpus:**
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

### FORFEITURE/PENALTY
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt.Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
28 U.S.C. SECTION 1345
Brief description of cause:
RURAL HOUSING SERVICE (RHS) f/k/a FARMERS HOME ADMINISTRATION (FmHA) FEDERAL FORECLOSURE

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $** $196,768.87+

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE   2/19/2019

SIGNATURE OF ATTORNEY OF RECORD
s/ Katherine A. Bell

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# United States District Court

**WESTERN** **DISTRICT OF** **KENTUCKY**
**AT PADUCAH**

United States of America

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**v.**

Blake Jordan Dunevant

**TO:**   (Name & Address of Defendant)

BLAKE JORDAN DUNEVANT
420 Theda Road
Mayfield, KY 42066-4808

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name & address)

Katherine A. Bell
Assistant U.S. Attorney
United States Attorney's Office
717 West Broadway
Louisville, KY  40202

an answer to the complaint which is herewith served upon you, within ____twenty-one (21)____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____                    _____
**CLERK**                                                                                                  DATE


_____
**(BY) DEPUTY CLERK**

# RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and Complaint was made by me[1] | Date |
| Name of Server (Print) | Title |

**Check one box below to indicate method of service**

☐     Served personally upon the defendant.  Place where served:

_____

☐     Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and

discretion then residing therein.  Name of person with whom the summons and complaint were left:

_____
_____

☐     Returned unexecuted:

_____
_____
_____

☐     Other (specify):

_____
_____
_____

## STATEMENT OF SERVICE FEES

| Travel  N/A | Services | Total |
|---|---|---|
| | | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Service Fees is true and correct.

Executed on     _____          _____
                        Date                                    Signature of Server

_____

[1]     **As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure**